### Dostal's, Inc. and Chamois Motor Lodge, Inc. v. Lawrence A. Wright, Commissioner of Taxes

[277 A.2d 125]

No. 89-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 22, 1971

*Fitts & Olson,* Brattleboro, for Plaintiffs.

*James M. Jeffords,* Attorney General, *George P. Stokes,* Assistant Attorney General, and *Norris Hoyt, Jr.,* General Counsel, on the brief, for Defendant.

**Barney, J.** The plaintiffs are two Vermont corporations seeking tax relief. The two businesses operate adjoining motor lodges at the Magic Mountain ski area in Londonderry. The outstanding stock of Chamois Motor Lodge, Inc., is entirely owned by Dostal's, Inc., and the same management runs both enterprises, but keeps separate accounting records for each. These two corporations qualify under federal law to file a consolidated U.S. corporation income tax return, form 1120. When, in 1967 and 1968, they followed the same procedure in Vermont, they were met with an assessment for additional tax liability and a denial of their right to file consolidated returns by the Vermont tax department. When, after hearing, administrative relief was denied, they appealed to county court, which also ruled against them, affirming the decision of the tax department. The matter is now here.

The facts are not in dispute and have been stipulated. Both corporations operate on a fiscal year that commences on May 1, and the filing dates of their tax returns are governed by law accordingly. The Chamois Motor Lodge, Inc., is a small operation run as an overflow accommodation for its larger owner. Its accounts showed a loss in the tax years in question. The Dostal lodge is much larger, with a restaurant on the premises that serves both businesses. This corporation showed a substantial

profit for the same tax period. The filing of consolidated returns, based on their federal returns for the fiscal years ending April 30, 1967 and April 30, 1968, would reduce the tax liability to Vermont of the two corporations by approximately $500.00 each year.

The plaintiffs' position is straight-forward. The tax laws of the United States permit the blending of Chamois' loss with Dostal's profit for lower tax liability by means of a consolidated return. The Vermont law, 32 V.S.A. § 5820, contains this statement:

> (a) This chapter is intended to conform the Vermont personal and corporate income taxes with the United States Internal Revenue Code, except as otherwise expressly provided, in order to simplify the taxpayer's filing of returns, reduce the taxpayer's accounting burdens, and facilitate the collection and administration of these taxes.

Further, at all relevant times, net income for Vermont tax purposes has been defined for any corporate taxpayer as the taxable income of the taxpayer for that taxable year under the laws of the United States, subject to certain exemptions. See 32 V.S.A. § 5811(18) and annotations. Based on these provisions of the law, the plaintiffs contend that consolidated returns, based on their federal returns, yielding the associated tax benefits, have implicit statutory justification, and may be filed by them as a matter of right.

The parallelism of the two tax years in question is wrenched somewhat, because, in November, 1967, a regulation was issued by the tax commissioner allowing consolidated returns for corporations only if the consolidated Vermont return, "will not result in a significant reduction of its Vermont corporate income tax liability." The plaintiffs argue that this regulation certainly cannot apply to their previously filed return for 1967. Moreover, they attack the regulation itself as inconsistent with the expressed statutory purpose, as well as being administratively defective in that it allocates to the commissioner authorization to determine the measure of a "significant reduction", without setting out, concurrently, any standards. Thus, they say, the regulation invalidly permits the commissioner's determination to be subjective, uncertain, inconsistent and perhaps even arbitrary.

■ It is certainly the law that delegation of authority from the legislature to the commissioner of taxes can validly take place only when associated with fixed limits on its exercise. The setting of a primary standard by the legislature is an essential prerequisite to the exercise of regulatory authority by an administrative body or officer. *State* v. *Auclair*, 110 Vt. 147, 163, 4 A.2d 107 (1939). A review of this area of the tax law is therefore in order.

Historically, the pre-eminent position of legislatures in our scheme of government came about through their revenue raising rights. The power to tax enabled parliaments to change monarchies from absolute to constitutional. This power persevered in the colonies and is a firm foundation of our constitutional system. It is in the light of this history that we must examine allegations of its delegation, since it is improbable that so critical a power would be lightly deputed.

The plaintiffs offer no specific statement of delegation to the commissioner of the power to allow consolidation of corporate tax returns, irrespective of tax consequences, and, indeed, there is none in the statutes. Their justification is based on inference, derived from the policy statement of 32 V.S.A. § 5820, quoted earlier.

■ However burdensome taxpayers may find it, the basic and ultimate purpose of income tax statutes is to raise revenue for the state. The purposes outlined by the statute simplifying the manner and form of rendering returns, including the reduction of accounting burdens and facilitation of collection, are subordinate considerations, yielding to the principal purpose unless the legislature clearly indicates a contrary intention.

If the inference suggested by the plaintiffs is enough to carry the day, certainly it should be consistently operative in all related areas. Yet the statutes disclose that where joint returns for husband and wife were involved, the legislature carefully noted, in statutory language, the existence of, and authorization for, this privilege of consolidating their returns. See 32 V.S.A. §§ 5823(3), 5827(a) and 5829(e), for example. Certainly this privilege is of such long standing and so well known, it might be sufficient to support it only by inference. Yet the law was made explicit.

Turning to the corporation sections of the income tax law, no mention appears anywhere that consolidation of returns between corporate taxpayers is authorized. This might not operate to bar consolidated returns between separate corporations as a reporting convenience, but it provides no authority for the use of the device as means of tax reduction. 32 V.S.A. § 5832 taxes the income earned or received by every taxable corporation. This, certainly, is specific language contrary to the inference advanced by the plaintiffs in support of tax reduction by consolidation. That being so, a construction facilitating evasion of the tax imposed is to be avoided. *In re Fulham's Estate,* 96 Vt. 308, 314, 119 A. 433 (1923).

■ The failure of the legislature to authorize consolidated corporate returns for tax saving purposes must be taken to be deliberate, in the light of its positive authorization of joint husband-wife returns. Proper concern for legislative intent, with its presumption that the consequences of the enactment were deliberately designed, prevents the assumption that the distinction was inadvertent. We cannot read words into a taxing statute which change its meaning, in such a case. *Portland Pipe Line* v. *Morrison,* 118 Vt. 417, 420, 110 A.2d 700 (1955). The regulation of the commissioner merely restated the requirements of the tax law as they existed, and was valid. The additional tax liability was properly assessed.

*Judgment affirmed. Let the result be certified.*